**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**JANNA ZEHREN,** Individually, and on behalf of others similarly situated,

Plaintiff,

vs.

**SE2, LLC,**

Defendant.

Case No.: 3:25-cv-01465-KAD

---

## AMENDED COLLECTIVE ACTION COMPLAINT WITH JURY DEMAND

Plaintiff Jana Zehren ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Amended Collective Action Complaint against Defendant, SE2, LLC, (hereinafter referred to as "SE2" or "Zinnia" or "Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) by Plaintiff, individually, and on behalf of all similarly situated persons, known and unknown, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2. Defendant uses a number of titles, including, but not limited to, Account Services Representative, Customer Service Representative, and Customer Service Specialist to refer to their contact center agents.

3. For purposes of this lawsuit, there are no material differences between those

positions, so they are collectively referred to herein as "Account Service Representatives" or "ASRs."

4. Defendant's ASR jobs are hourly, non-exempt positions that typically pay several dollars more than federally mandated minimum wage.

5. Defendant employed Plaintiff as an hourly contact center employee with the job title of "Account Service Representative."

6. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's ASRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[1]

7. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9. Defendant does not compensate its ASRs, like Plaintiff, for all work performed.

10. Instead, Defendant required their ASRs to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not logged

---

[1] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers* (last visited Oct. 24, 2025).

into Defendant's timekeeping system.

11. As a result of this policy, ASRs are not being paid for all the time worked, including all overtime hours worked.

12. Defendant also fails to compensate their ASRs, for example Plaintiff and all similarly situated employees, for pre- and mid-shift, off-the-clock work attributed to technical problems with the computers, networks, programs/applications, and/or phones they used daily.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

14. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

15. This Court has general personal jurisdiction over Defendant, because Defendant maintains its principal address within this District at 600 Steamboat Road, Greenwich, CT 06830.

16. Defendant's annual sales exceed $500,000 and they have more than two (2) employees, so the FLSA applies in this case on an enterprise basis.

17. Defendant simultaneously operates in multiple states and has done so throughout the time period relevant to the instant claims.

18. Defendant's ASRs, including Plaintiff, engage in interstate commerce (regular and recurrent interstate communications, among other things) and, therefore, they are also covered by the FLSA on an individual basis.

19. A private party may also bring an action for damages for breach of contract under the common law.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs ASRs in this District, conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

21. Venue is also proper in this District because Defendant maintains its principal office in this District and the policies giving rise to the instant claims emanated from Defendant's office in Greenwich, Connecticut.

## PARTIES

22. Plaintiff Janna Zehren is a citizen of Oklahoma.

23. Plaintiff was employed by Defendant as an hourly ASR from approximately October 24, 2022, through June 27, 2025.

24. Defendant SE2, LLC is a Kansas Limited Liability Company and identifies its principal office as 600 Steamboat Road, Suite 105, Greenwich, CT 06830. *See* Kansas Secretary of State Website (https://www.sos.ks.gov/eforms/BusinessEntity/Search.aspx) pertinent portion attached as **EXHIBIT A** (last visited Oct. 24, 2025).

25. Although Defendant maintains numerous offices throughout the United States, its "nerve center" is its office located in Greenwich, Connecticut.

26. The Greenwich, Connecticut office location is the only location identified by address in the footer of every page on Defendant's website.

27. Defendant identifies itself as headquartered/located in Greenwich, CT on its LinkedIn page. *See* https://www.linkedin.com/company/zinniatm/ (last visited Oct. 24, 2025).

28. Likewise, on its website, Defendant directs questions regarding its Privacy Policy to its offices in Greenwich, CT. https://zinnia.com/privacy-policy/ (last visited Oct. 24, 2025).

29. A plurality of the thirty-three (33) employees identified by Defendant as its

"Leadership Team," work out of Defendant's Greenwich, Connecticut headquarters. https://zinnia.com/meet-our-leaders/ (last visited Oct. 24, 2025).

30. The members of Defendant's Leadership Team who work out of Defendant's Greenwich, Connecticut headquarters include but are not limited to: CEO, Michele Trogni; Head of Finance, Diliana Damianova; EVP, Head of Insurance Platforms, George Esposito; Head of Wealth and Distribution Platforms, Hilani Kerr; Head, Delivery, Insurance Solutions, Arun Kumar; Head of Corporate Technology & Incident Management, Joanne Steele; and Head of Enterprise Marketing, Paul Tyler. *Id*.

31. As of October 24, 2025, Defendant was also hiring for the following senior positions at it Greenwich, CT office: Head of AI; Program Manager-Data & AI Insights; Customer Solutions Architect (Pre-Sales); Director, FP&A; Director, Partnerships; Head of Total Reqards Strategy & Operations; Revenue Operations Manager (Data/Analytics); Senior Manager, Client Partner; Senior Risk Analyst, Americas; Director, Client Delivery Lead; Director, Product Management; Lead Product Manager (Complaint and Fraud); Senior Product Manager; Senior Product Manager-HR Transformation.

32. Upon information and belief, the policies, acts and omissions giving rise to this lawsuit emanated from Defendant's headquarters in Greenwich, CT.

33. SE2 is a company with multiple facets.

34. Relevant here is the SE2 brand "Zinnia" which is a technology-driven third-party administrator for the life and annuity insurance industry.

35. Per its website, Zinnia's "platforms simplify how life insurance and annuities are built, bought, sold, and serviced." *See* https://zinnia.com (last visited August 19, 2025).

36. In order to service its portfolio of insurance company clients and their customers,

Zinnia employs hundreds if not thousands of ASRs like Plaintiff, who work in call centers and/or hybrid/remote positions from their homes.

37. During the relevant time, Defendant has employed thousands of ASRs, including Plaintiff, to assist their customers with customer service needs.

## GENERAL ALLEGATIONS

38. ASRs are typically paid at a rate of approximately $13.00 to $25.00 per hour.

39. Plaintiff was most recently paid $18.00 per hour.

40. ASRs are mostly employed on a full-time basis and typically work approximately 40 hours per week or more.

41. Zinnia frequently advertises for ASR job openings and tells potential job applicants that overtime work is available for many of the positions.

42. Prior to being hired, ASRs receives an offer from Defendant that sets forth the requirements of an ASR position, the job duties, and the offered rate of pay.

43. Plaintiff received such an offer from Defendant to serve as an ASR, and she accepted Defendant's offer with the understanding that her base wage rate, would be paid as promised.

44. Plaintiff performed under the contract by carrying out her job duties and responsibilities.

45. Once hired, Defendant provides all ASRs with training on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day.

46. The training Defendant's ASRs receive is substantially, if not entirely, the same and all ASRs are subject to the same disciplinary policies.

47. Plaintiff accepted Defendant's offer to serve as an ASR with the understanding that her base wage rate, would be paid as promised, for all hours worked.

48. During their training, ASRs are taught, *inter alia*, how to open and use Defendant's computer networks and software programs/applications; how to track their time in Defendant's timekeeping system; the importance of attendance and schedule expectations; and Defendant's policies related to each topic.

49. Plaintiff and other similarly situated ASRs are instructed not to clock in unless and until they are "call-ready."

50. However, at the same time, Defendant's ASRs are required to be logged into and have loaded all its essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins.

51. Defendant enforced this policy and procedure by routinely evaluating, and at times disciplining, ASRs based on schedule adherence metrics that tracked the amount of time they spent clocking in but were unavailable to field calls.

52. Thus, Defendant forced its ASRs to perform the boot up and login process before clocking into Defendant's timekeeping system.

53. All of Defendant's ASRs use the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.

54. These programs and applications are integral, and an important part of the ASRs' work and they cannot perform their jobs without them.

55. Once training is completed, Defendant requires its ASRs to follow daily computer login procedures.

56. In order to perform their job, Plaintiff and all other ASRs are required to boot up

and log in to various computer networks, software programs and applications, in order to access information necessary to perform their job functions.

57. However, Plaintiff and all other ASRs are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete.

58. The pre-shift off-the-clock time Plaintiff and all other ASRs spend booting up and logging in to their computers directly benefits Defendants and is integral and indispensable to the ASRs' job responsibilities. *Cadena v. Customer Connexx LLC,* 51 F.4th 831 (9th Cir. 2022); *Peterson v. Nelnet Diversified Sols., LLC,* 15 F.4th 1033 (10th Cir. 2021); *see also Wilson v. Peckham, Inc.*, 2021 WL 3168616, at *5 (W.D. Mich. July 26, 2021) ("[C]all center agents cannot avoid booting up and logging into their computers if they are to perform the work for which they were hired.... That process is akin to preparing a tool that the employee must use throughout the work day[.]"); *Garcia v. Vertical Screen, Inc.*, 580 F. Supp. 3d 79, 87 (E.D. Pa. 2022) ("Plaintiffs' 'consistent use of the computer and its programs to perform their work' means that booting up their computers and the systems that they used to both complete their work and receive compensation for it can be compensable under the FLSA." (quoting *Peterson*, 15 F.4th at 1041–42)); *Droesch v. Wells Fargo Bank, N.A.*, No. 20-cv-06751 (JSC), 2022 WL 17669713 (N.D. Cal. Dec. 14, 2022) (slip copy); *see also Jackson v. ThinkDirect Mktg. Grp., Inc.*, No. 1:16-cv-03749, 2019 WL 8277236, at *4 (N.D. Ga. Dec. 19, 2019) (holding that the time remote workers spent logging into their VPN is compensable under the FLSA).

59. Plaintiff and other similarly situated ASRs are also trained or instructed to clock out before closing all work applications and systems to make certain they are clocked-out the moment they are done fielding calls.

60. Defendant's ASRs also perform off-the-clock work when returning from lunch, for

example undergoing some or all of the computers boot up process mentioned above, and when they experience technical difficulties, which kick them out of Defendant's timekeeping system.

61. Despite knowing Plaintiff and all other ASRs perform this pre-, mid- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffer and permit it to happen.

62. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other ASRs boot up and log into their computers each day, both pre- and mid-shift, along with the time they log into their telephone systems.

63. Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other ASRs experience down time due to technical issues.

64. Because Defendant requires its ASRs to perform pre- mid- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time ASRs spend working for Defendant.

65. Thus, the hours reflected on the ASRs' paystubs are also inaccurate representations of the hours they worked.

66. Despite the ability to track the amount of time Plaintiff and other ASRs spend in connection with the pre-shift boot-up and login process, mid-shift boot-up process, post-shift shutdown process, and technical downtime, Defendant failed to pay Plaintiff and other ASRs for the off-the-clock work they perform each shift, thus breaching their contracts with their ASRs.

## A. Pre-Shift Off-the-Clock Work

67. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other ASRs are required to start up and log into various secure computer networks and software programs/applications in order to access information.

68. More specifically, in order to perform their jobs and prior to the beginning of each scheduled shift, Plaintiff, along with the other ASRs, was required to complete the following tasks:

a. Turn on her computer;

b. Load and log into Defendant's VPN (virtual private network);

c. Open, load and log into Orion;

d. Open load and log into Life Cad;

e. Open load and log into On Base;

f. Open load and loginto SharePoint/Knowledge Base;

g. Open and load Slack;

h. Open and load Outlook;

i. Open load and log into Five 9 (later Day Force) at which point she was both clock in and "call ready" simultaneously.

69. The above tasks take substantial time on a daily basis with said time ranging from eight (8) to twenty (20) minutes per day, and even longer (up to thirty (30) minutes) on days when Defendant's computer networks and programs are not working properly.

70. Defendant's ASRs complete this process before each shift and before they can field phone calls; however, they are not actually "clocked in" for their shifts until *after* the computer boot-up and login process is complete.

71. This holds true regardless of whether the ASR clocks in at the start of their shift or 10-20 minutes prior.

72. As a result, ASRs, including Plaintiff, spend between eight (8) to twenty (20) minutes or more at the beginning of each shift performing off-the-clock (uncompensated) work for Defendant.

73. The unpaid off-the-clock work performed prior to each shift by Plaintiff and other ASRs is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as ASRs.

**B. Mid-Shift Off-the-Clock Work**

74. Defendant promises its ASRs one unpaid thirty (30) minute meal period each eight (8) hour shift (the bare minimum required by federal law).

75. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purpose of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

76. Instead of complying with the law, Defendant does not provide ASRs with bona fide meal periods because they require the ASRs to resume taking live calls promptly at the end of their scheduled meal breaks, meaning that the ASRs must return to their computer stations prior to the end of their unpaid meal breaks to log back in and reconnect to computer programs.

77. Only after Defendant's ASRs reboot the programs that they are automatically logged out of are the ASRs allowed to clock into Defendant's timekeeping system.

78. The work performed by Defendant's ASRs during their unpaid meal breaks takes substantial time on a daily basis, in the range of fifteen (15) to twenty (20) minutes per shift, but ASRs are not paid for this time.

79. The unpaid off-the-clock work Plaintiff and other ASRs perform during their lunch breaks and prior to clocking back into Defendant's timekeeping system is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as ASRs.

### C. Technical Down Time

80. Additionally, in the course of performing their jobs, Plaintiff and other ASRs regularly experience technical problems with their computer systems, which log them out of the time keeping systems and cause them to redo some or all of the boot up process.

81. Defendant is aware of the time ASRs spend experiencing technical difficulties and working with Defendant's technical team to resolve these difficulties, and Defendant can pay ASRs for this time, but do not.

### D. Post-Shift Off-the-Clock Work

82. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other ASRs are required to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls.

83. The post-shift off-the-clock work generally takes between one (1) to two (2) minutes per day, but Defendant's ASRs are not paid for this time.

84. The post-shift off-the-clock work Plaintiff and other ASRs perform is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as ASRs.

### E. The Off-the-Clock Work Results in Viable "Gap Time" Claims

85. "Gap time" claims are those in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over

40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Athan v. United States Steel,* 364 F.Supp.3d 748, 753-54 (E.D. Mich. 2019); 29 C.F.R. §778.315 ("[Overtime] compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him/her for the nonovertime hours under his/her contract (express or implied) or under any applicable statute has been paid.").

86. Plaintiff, and similarly situated ASRs, regularly worked non-overtime hours (i.e. "gap time") for which she was not paid.

87. During the weeks that ASRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight time wages, in breach of Defendant's contracts with their ASRs.

**F. <u>Defendant Benefitted from the ASRs' Off-the-Clock Work</u>**

88. At all relevant times, Defendant has requested and benefited from the off-the-clock work performed by Plaintiff and all other ASRs in connection with the pre-, mid- and post-shift activities described above.

89. At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other ASRs.

90. At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other ASRs spend in connection with the pre-, mid- and post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiff and all other ASRs for the off-the-clock work they performed.

91. At all relevant times, Plaintiff and all other ASRs have been non-exempt hourly employees, subject to the requirements of the FLSA and related state laws.

92. At all relevant times, Defendant used its attendance and adherence policies against

Plaintiff and the ASRs in order to pressure them into performing pre-, mid- and post-shift work, off-the-clock.

93. Defendant expressly trained and instructed Plaintiff and all other ASRs to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

94. Defendant instructs ASRs to have all work applications and systems fully loaded before the start of their shifts, which takes them approximately eight (8) to twenty (20) minutes or more to complete, but Defendant prohibited ASRs from clocking into its timekeeping software unless and until the ASRs are prepared to field calls – which is either at the start of their shift or eight (8) to twenty (20) minutes before.

95. Similarly, at the end of the shift, Defendant instructs ASRs to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls.

96. Defendant similarly instructs its ASRs to have all work applications and systems fully loaded the moment their lunch breaks conclude so they can be prepared to field calls.

97. At all relevant times, Defendant's policies and practices deprived Plaintiff and the ASRs of wages owed for the pre-, mid- and post-shift activities they performed.

98. During the weeks that ASRs work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

99. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks worked under forty (40) hours.

100. Defendant has known or should have known that the time spent by Plaintiff and other ASRs in connection with the pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they have acted in good faith.

101. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**COLLECTIVE ACTION ALLEGATIONS**

102. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly ASRs who worked for Zinnia at any time during the three (3) years preceding the filing of this Complaint through judgment.*

(hereinafter referred to as the "FLSA Collective").[2] Plaintiff reserves the right to amend this definition if necessary.

103. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

104. Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

105. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant were aware of all of the work the Plaintiff and the proposed FLSA

---

[2] This definition excludes employees who participated in the *Jenkins* settlement and did not work after the period of time covered in the settlement of the *Jenkins* case, if any.

Collective performed.

106. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

b. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for other off-the-clock work, such as tech time; the mid-shift boot up process; and the time spent post-shift closing all applications, networks and programs and shutting down their computers; and

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant.

107. Defendant is aware, or should have been aware, that federal law requires them to pay Plaintiff and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

108. Defendant's unlawful conduct has been widespread, repeated, and consistent.

109. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

110. The employment relationships between the Defendant and every proposed FLSA

Collective member are the same and differ only by name, location, and rate of pay.

111. The key issues – the amount of uncompensated pre-, mid- and post-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

112. There are many similarly situated current and former ASRs who have been underpaid in violation of the FLSA.

113. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

114. Plaintiff estimates the FLSA Collective, including both current and former ASRs over the relevant period, includes thousands of members.

115. The precise number should be readily available from a review of Defendant's personnel and payroll records.

116. All of the estimations discussed herein will be refined after class discovery is completed.

**COUNT I**
**FLSA COLLECTIVE ACTION (OVERTIME)**

117. Plaintiff re-alleges and incorporates all previous paragraphs herein.

118. At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

119. At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

120. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

121. Plaintiff and other FLSA Collective members, by virtue of their job duties and

activities actually performed, are all non-exempt employees.

122. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

123. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

124. At all times relevant to this action, Defendant required Plaintiff and all the proposed FLSA Collective members to perform pre-, mid- and post-shift work off the clock, every shift, and Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

125. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective is an essential part of their jobs and these activities, and the time associated with these activities is not *de minimis*.

126. As a result of the off-the-clock hours suffered/permitted by Defendant, Plaintiff worked over forty hours in one or more workweeks for which she was not properly compensated at least time and one half of regular rate of pay for all such hours worked.

127. For example, in the work period 5/19/25 to 6/1/25, Plaintiff worked over 40 hours in one of the workweeks. *See* Paystub attached as **EXHIBIT B**.

128. Thus, the off-the-clock hours suffered/permitted by Defendant in that workweek were necessarily overtime hours and were wholly unpaid because they were off-the-clock.

129. Likewise, in workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime

should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

130. Defendant's violations of the FLSA have been knowing and willful.

131. Defendant has known or could have determined how long it takes its ASRs to perform their off-the-clock work.

132. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for these work activities but did not.

133. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Connecticut Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

c. An Order designating the Plaintiff as representative of the FLSA Collective, and undersigned counsel as Class counsel for the same;

d. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

e. An Order declaring Defendant's violations of the FLSA were willful;

f. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, and the FLSA Collective the full amount of damages and liquidated damages available by law;

g. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing

this action as provided by statute;

h. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

i. An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: October 28, 2025.

Respectfully Submitted,

*/s/ E.J. Fink*
E.J. Fink
CT Bar No.: 222972
Morgan & Morgan, P.A.
199 Water St., Suite 1500
New York, NY 10038
Telephone: (475) 204-3101
Fax: (212) 801-4625
E-mail: ephraim.fink@forthepeople.com

Andrew R. Frisch, *Pro Hac Vice*
Morgan & Morgan, P.A.
8151 Peters Road, 4th Floor
Plantation, FL 33324
Telephone: (954) WORKERS
Fax: (954) 327-3013
E-mail: africh@forthepeople.com

***Counsel for Plaintiff***

# CERTIFICATE OF SERVICE

I HEREBY certify that on this 28th day of October 2025, the foregoing document was filed using the CM/ECF system which will send copies to all counsel of record.

*E.J. Fink*
*E.J. Fink*